JOY MFG. CO. v. HERZLER & HENNINGER MACH. WORKS.

No. 4210.

Circuit Court of Appeals, Seventh Circuit.

March 28, 1930.

Rehearing Denied May 28, 1930.

John B. Macauley, of Chicago, Ill., for appellant.

Howard M. Cox, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge.

Appellant brought this suit to restrain infringement of the Joy patent, No. 1,306,064, issued June 10, 1919, and covering a "loading machine" for loading coal. The District Court found there was no infringement, and dismissed the suit.

In his specifications patentee said:

"The present invention relates to certain improvements in loading machines, and especially to that class * * * which are adapted to gather coal from the floor of a mine and transfer it to conveniently placed cars for transportation from the mine.

"In the mining of coal it is the common practice to break the coal from its natural bed by blasting fragments from the face of the vein. By this method the broken coal is left in heaps adjacent the working face from which it must be loaded into the cars, entailing labor of the most arduous character. I am aware that machines have been proposed having inclined conveyers adapted to gather the coal from the floor of the mine and transfer it to conveniently placed cars but great difficulty has been experienced in the operation of such machines owing to the irregular size and shape of the fragments into which the coal is broken by the blasts, to the irregular surface of the floor and to the restricted space, especially vertically, in which the machine must operate.

"It is the especial object of the present invention to provide in a machine of the class described, improved devices by which the coal is gathered from the floor of the mine onto the conveyer by which it is deposited in the pit cars.

"A further object is to provide improved means to feed the gathering device to its work.

"A further object is to provide improved means by which the gathering mechanism can be moved laterally across the working face."

Claims 5, 7, and 30 are representative of the claims sued upon, and are here set forth:

"5. A machine of the class described including a conveyer having a substantially horizontally arranged apron connected thereto, and gathering mechanism including fingers and means to move said fingers in substantially horizontal orbital paths, the greater portions of which extend beyond the free end of said apron.

"7. A machine of the class described including a conveyer, and gathering mechanism including a finger substantially horizontally arranged at each side of the conveyer and means to alternately move said fingers toward and away from the conveyer in noncircular orbital paths.

"30. A loading machine of the class described including a conveyer, gathering members, and means to cause said members to advance from each side of the conveyer to longitudinally penetrate the material to be loaded and then move rakingly toward the conveyer."

Claim 30, it is to be noted, is somewhat broader, in that the means provided for moving the fingers are not so restricted as to cause said fingers to move in substantially *horizontal* or *orbital* paths.

Most coal-loading machines of the type under consideration are similar in many respects. They each include a frame adapted to be fed progressively forward by any suitable tractive mechanism. On the front end is usually mounted a downwardly inclined sheet metal apron or plate of suitable width and forward projection. At the rear portion of this metal apron is mounted a conveyor of the scraper type, and consisting of an elongated upwardly inclining trough having a smooth upper surface along the opposite margin of which travel two endless

chains. No novelty is asserted and no avoidance of infringement is claimed by reason of the conveyer or the gathering mechanism in either machine up to a certain point. The novelty upon which appellant relies consists of the attachment of the so-called gathering or picking arms. These arms are two in number and located on each side of the inclined plane, and are driven by suitable power. Appellant's counsel describes its arms in this language:

"As best seen in the drawings, these gathering arms are mounted respectively on opposite sides of the conveyor at the front end of the machine. They are pivoted on disks driven from the conveyor chains. The arms are also provided with guide rods which extend back through pivoted guides and control the paths of movement of the arms as the latter are operated by the rotation of the disks on which they are pivoted. The arms operate in alternation.

"* * * in use the loading mechanism is slowly driven forward as a whole with the chain conveyor moving upwardly along the trough and the arms swinging in their orbital paths. The arms engage the heap of coal to be loaded in advance of the incline while being thrust forward in substantially their outer position on lines well outside the path of the conveyor. They enter the mass of coal, and then move laterally inward toward the center line of the machine, * * * They thus dig into the coal, rake through the bottom of the pile of coal at a short distance above the floor of the mine, undermining and loosening up the compacted coal and gathering it from outside the path of the conveyor in toward the center of the machine in front of and onto the conveyor, as the machine moves slowly forward. The conveyor, therefore, instead of loading only the coal immediately in front of it, receives coal from a considerable distance on each side of its path. The arms not only break up and gather the coal from both sides of the conveyor into the path thereof, but they also sweep it up onto the incline."

The District Judge filed a memorandum wherein he said:

"The plaintiff's combination, in order to constitute a valid invention over the prior art, included what, in the court's opinion, is the one element essential to such validity, and that is the addition, to elements that were old, of gathering arms designed to move in a horizontal plane, approximately upon the floor of the working place through an irregular oblong orbit of such form as to cause the arms to reach out and bring the coal to and upon the conveyor belt, and at the same time not sweep any of the coal from the belt. Plaintiff's combination with these arms attached to discs in such manner as to produce the aforesaid result with practical success, accomplished something that had not previously been done. Hamilton had been very near this result, but he did not quite achieve success. No other inventor, whose patents have been called to the attention of the court, came near plaintiff's successful device.

"* * * defendant's machine does not do the specific thing which Joy accomplished; that the so-called pick arms of defendant are not the equivalent of the plaintiff's gathering arms. They are not substantially horizontal; they do not describe the same orbit; they do not sweep the floor, or come in contact with it. They do not in any particular achieve the result of the gathering arms of Joy. They could not be used successfully with the plaintiff's conveyor belt, and plaintiff's machine, * * * with defendant's pick arms substituted, could not successfully operate. The defendant has adopted a conveyor belt, with bear claws attached to the same, all old in the art, and has added its pick arms, which do not perform the function of plaintiff's gathering arms. The two machines operate in entirely different manners and produce entirely different results."

We fully agree with Judge Lindley as to the validity of the patent. The closest prior art citation is the Hamilton patent. Joy's invention can be readily distinguished from Hamilton's in several respects. The utilization of arms in advance of the inclined conveyor and covering a wider range to serve the double purpose of breaking the coal and gathering it to a position where the endless chain conveyor comes in contact with it is original with Joy. Hamilton's machine was provided with what is called vanes. But these vanes could not, and were not intended to, operate on the coal in advance of the front edge of the conveyor either to break it up or gather it in. And this distinction is what made Joy's machine a success.

Appellee's machine differs, if at all, in the location, structure and operation of its arms—called by it picks. They are eccentrically swiveled upon disks and guided at their rear end. Their attachment and operation is not unlike that in appellant's machine. They are alternately thrust forward. Appellee says they act as picks but not as gathering arms. Appellant insists that they do both.

Whether they necessarily act as gathering arms as well as picks is the turning point in the case.

The operative portions of the arms in appellee's structure are arcuate. They are so constructed and mounted that, when they are thrust forward and engage the coal in advance of the conveyor, the arched portions are flat. But, as they approach their rearmost portion, they are given a quarter turn to raise the arcuate portions of the arm to avoid contact with large lumps of coal, pushed by the conveyor blades. These lumps of coal pass under the curved forward ends of the pick bars.

The determinative factor in the controverted issue is not one of mechanical equivalents. Rather, it depends upon an ascertainment of Joy's contribution to the art. An examination of the file wrapper, while not conclusive, is illuminating in that it discloses the inventor's conception of his own invention. Writing the Patent Office in respect to certain claims, he says:

"Claim one should be allowed as applicant cannot see at present that the reference discloses a practical arrangement of gathering mechanism for use upon low built coal loading machines, in which the fingers per se move bodily longitudinally to penetrate a pile of material *and then laterally and rearwardly to engage material and move it onto a conveyer.*"

Without quoting at further length from the specifications or the claims, we think it can be correctly said that the novelty of the invention resides in the arms provided for gathering in the coal; that these arms, by reason of their motion and their structure, served primarily to gather the coal and draw it toward the conveyer. This was their avowed object in appellant's machine. While the arms in appellee's machine do, to a certain extent, act as gatherers, they are essentially picks. Their gathering functions are not stressed. Nevertheless, their operation up to the point when the picks are given a quarter turn necessarily forces the coal toward the platform from which it is moved to the conveyer. To this extent the picks or arms serve to gather as well as to break up the coal.

The heart of the Joy invention lies in the location, structure, and operation of the arms; the object being to secure a gathering result due to the prearranged operation of these arms. This is the thought expressed in specifications, claims, and file wrapper.

It is the quality that has made the device a commercial success.

The arms or picks in appellee's machine may, and doubtless do, serve primarily to break loose the coal which has not been entirely separated from the wall of coal by the blast or explosion. But to the extent that the picks push the coal, when broken loose, inwardly, as they necessarily do, they act as gathering arms, and infringe the claims of the patent. The limited extent to which these arms act as gathering means and the fact that they are primarily used as picks to penetrate and break the coal left us, at first, with the impression that the question of infringement was somewhat doubtful. We have concluded, however, after more mature study, that infringement is disclosed.

Why did appellee make its picks arcuate if not to gather in the coal? Operating only as picks, they would have served better if they were straight. The mechanism which controlled their course would have been much simpler, and, thus constructed, they clearly would not have infringed Joy's patent.

The decree is reversed, with costs, with direction to enter one in accordance with the views here expressed.